UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

UNITED STATES OF AMERICA,

v.  

Case # 15-CR-06085-FPG

DECISION AND ORDER

WINIFREDO GONZALES,

                Defendant.
───────────────────────────────────────

## INTRODUCTION

On February 27, 2023, Defendant Winifredo Gonzales, who is currently incarcerated at Allenwood Medium Federal Correctional Institute in Allenwood, Pennsylvania, brought a *pro se* motion for compassionate release. ECF No. 111. For the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

Defendant initially pled guilty to a two-count information on June 23, 2015, and on December 15, 2016, was sentenced to 228 months imprisonment followed by five years of supervised release. Defendant's initial plea and conviction were subsequently vacated by the Second Circuit. On remand, Defendant pled guilty to a one-count superseding information on August 20, 2018, which charged conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846. ECF No. 55. In the plea agreement, Defendant admitted that between October 2014 and on or about February 10, 2015, in the Western District of New York and elsewhere, he knowingly, willfully and unlawfully conspired and agreed with others, known and unknown, to possess with intent to distribute, and to distribute, 5 kilograms or more of cocaine, a Schedule II controlled substance. *Id*. at 3. Defendant's involvement included, among other things, "obtaining multi-kilogram shipments of cocaine smuggled from

Guyana. . . via private aircraft; storing kilograms of cocaine . . . direct distribution of kilograms of cocaine . . . and packaging and delivering money to sources of cocaine supply." *Id*. In addition, Defendant admitted that on February 10, 2015, he knowingly possessed "17 kilograms of cocaine, approximately $78,603 in cash, and two firearms." *Id*. On December 17, 2018, the Court resentenced Defendant to a term of imprisonment of 151 months, followed by a five-year term of supervised release. ECF No. 66.

On February 27, 2023, Defendant moved for compassionate release. ECF No. 111. The Government did not respond. The Court now turns to Defendant's motion.

## DISCUSSION

### I. The Compassionate Release Framework

Defendant requests release under the First Step Act's "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A). This statute provides an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed. *United States v. Lucas*, No. 15-CR-143, 2020 U.S. Dist. LEXIS 75428, at *3 (W.D.N.Y. Apr. 29, 2020) (citation, internal quotation marks, and brackets omitted). Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if a defendant can show that (1) he has met the statutory exhaustion requirement; (2) "extraordinary and compelling reasons" warrant a reduction; (3) he is not a danger to the community; and (4) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *Lucas*, 2020 U.S. Dist. LEXIS 75428 at *3-4; *see also* U.S.S.G. § 1B1.13 (the United States Sentencing Guidelines Policy Statement on compassionate release).

Because courts consider the § 3553 factors at sentencing, the Court's task on a motion for compassionate release is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be

inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (discussing legislative history of provision). At issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at 431.

### A. Exhaustion

A district court may not act on a motion for compassionate release unless the Defendant "has fully exhausted all administrative rights to appeal" the BOP's failure to file a motion for compassionate release on behalf of the Defendant or has waited "30 days from the receipt of such request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McIndoo*, 613 F. Supp. 3d 723, 729 (W.D.N.Y. 2020). Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a "claim-processing rule[ ]" and accordingly "may be waived or forfeited" by the government. *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (quoting *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 19-21 (2017)).

As a general matter, if the government fails to raise exhaustion, it has waived exhaustion and the Court may proceed to the merits of a defendant's request for compassionate release. *United States v. Manzano*, 505 F. Supp. 3d 739, 743 (E.D. Mich. 2020); *see also United States v. Roper*, No. 3:12-CR-113, 2020 WL 5984352, at *2 (E.D. Tenn. Oct. 8, 2020) (concluding "one of the exceptions to enforcing mandatory claim-processing rules applies" because "the government has waived any objection to defendant's motion on exhaustion grounds.").

Here, Defendant has satisfied the administrative exhaustion requirement with respect to his motion for compassionate release by submitting correspondence to the Bureau of Prisons pursuant to 18 U.S.C. § 3582. ECF No. 111-1 at 31-36. In any case, the government has not responded to

3

Defendant's motion, and therefore has not raised exhaustion, the Court deems the exhaustion requirement waived with respect to Defendant's motion.  *See Saladino*, 7 F.4th at 123.

### B.  Whether Extraordinary and Compelling Reasons Exist

Here, Defendant alleges that "extraordinary and compelling" reasons justify his release because of (i) his "continued risk of COVID-19 exposure"; (ii) "his current medical conditions"; (iii) "the medical conditions of his family"; and (iv) "his lack of access to programming based solely upon his immigration status." ECF No. 111 at 3.

Defendant has not satisfied his burden of showing entitlement to release.  *See generally United States v. Flores*, No. 17 Cr. 449-17 (KPF), 2020 U.S. Dist. LEXIS 98334, at *10 (S.D.N.Y. June 3, 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citation omitted)).  For the reasons below, none of the circumstances Defendant has presented amount to "extraordinary and compelling" reasons warranting release.

### 1.  COVID-19

Defendant first argues that he is entitled to release because of the new XBB1.5 subvariant of the coronavirus. ECF No. 111 at 8. Defendant alleges that this new subvariant is even more transmissible and "is a recipe for disaster in a communal setting." *Id.* Defendant argues that because of his pre-diabetes, hyperlipidemia and an enlarged liver he has "increased COVID-19 risk." ECF No. 111 at 14. The Court does not consider this an "extraordinary and compelling" reason warranting release.

"[A] defendant's pre-existing health conditions . . . in combination with the increased risks of COVID-19 in prisons" may, in some cases, "constitute 'extraordinary and compelling reasons' warranting relief." *United States v. Delgado*, 457 F. Supp. 3d 85, 89 (D. Conn. 2020). However, at this stage of the pandemic, "the threat from COVID-19 has diminished nationwide and within

the BOP." *United States v. Parker*, No. 18-CR-138, 2023 WL 2806069, at *3 (W.D.N.Y. Apr. 5, 2023) (citations omitted). Specifically, FCI Allenwood Medium, where defendant is housed, is currently operating at COVID-19 operational level 1, the lowest COVID-19 threat level. *See COVID-19 Modified Operations Plan & Matrix, Fed. Bureau of Prisons*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed September 28, 2023).

More generally, since the start of the pandemic, the spread of COVID-19 across the country has significantly decreased. *See COVID Data Tracker*, CDC, https://covid.cdc.gov/covid-data-tracker/#trends_weeklycases_select_00 (last accessed April 4, 2023). As of May 11, 2023, the federal government ended the national emergency concerning COVID-19. *See HHS Secretary Xavier Becerra Statement on End of the COVID-19 Public Health Emergency*, U.S. Department of Health and Human Services, https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html.

Over three years into the pandemic, "the Court finds that the risks that were heightened at the onset of the pandemic have largely been reduced or been under control at this late stage of the pandemic." *United States v. Malloy*, No. 07 CR. 898, 2023 WL 2237504, at *4 (S.D.N.Y. Feb. 27, 2023). In sum, there is no current issue making compassionate release appropriate here. *See United States v. Craft*, No. 02-81043, 2023 WL 318445, at *2 (E.D. Mich. Jan. 19, 2023) ("Early in the COVID-19 pandemic, some courts found the risk of contracting the virus in prison, coupled with a defendant's serious health conditions, met the extraordinary and compelling standard. However, pandemic conditions have evolved and these factors no longer constitute extraordinary and compelling reasons.").

Defendant makes generalized arguments about the BOP's "[failure] to successfully mitigate against outbreak after outbreak thereby putting [his] life at risk needlessly," and citing nationwide statistics about COVID-19 deaths in prisons. ECF No. 111 at 22. However, he fails to specify how his particular medical needs are being neglected or put at risk. His generalized fear of contracting COVID-19 is insufficient to meet the demanding standard of "extraordinary and compelling" reasons in light of stabilized conditions at FCI Allenwood Medium. *See also United States v. Wofford*, No. 6:19-CR-06061, 2022 WL 9583714, at *3 (W.D.N.Y. Oct. 17, 2022) (denying compassionate release where defendant "established that his existing medical conditions present a risk factor for severe illness or death from COVID-19, given that [the prison] appears to have the virus under control"); *United States v. Roman*, No. 19-CR-116, 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022) (denying compassionate release to inmate with pre-existing medical conditions because the threat from COVID-19 had diminished, the prison where defendant was housed implemented safety measures to reduce risk of infection); *United States v. Skyers*, No. 16-CR-377, 2021 WL 2333556, at *3 (E.D.N.Y. June 7, 2021) (denying compassionate release to defendant with asthma, obesity, and hypertension because COVID-19 appeared to be under control at the facility, and "a generalized fear of contracting COVID-19 does not constitute extraordinary and compelling circumstances warranting release").

Finally, Defendant has acknowledged that he is vaccinated. ECF No. 111 at 21. "Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines." *United States v. Mena*, No. 16 CR 850, 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021). Even if Defendant were not vaccinated, courts have been unsympathetic to unvaccinated defendants seeking compassionate release. *See, e.g., United States v. Poupart*, No. 3:11CR116, 2021 WL 917067, at

\*1 (D. Conn. Mar. 10, 2021) ("The opportunity for individually-identifiable inmates to opt to receive the COVID-19 vaccine represent[ed] a sea change from their previous COVID-19 infection vulnerability and inability to protect themselves against the virus, even with comorbidities."); *United States v. Richiez-Castillo*, No. 00-CR-54, 2021 WL 1746426, at \*5 (W.D.N.Y. May 4, 2021) ("Courts may consider a defendant's declination of a COVID-19 vaccine as part of their 'extraordinary and compelling' reasons analysis where a defendant argues his or her health is compromised while incarcerated during the pandemic, due to certain high-risk medical conditions."); *Sanchez v. United States*, No. 04-CR-36, 2023 WL 144220, at \*4 (S.D.N.Y. Jan. 10, 2023) ("In light of access to vaccines, prison protocol improvements, reduced infection rates, and effective therapeutics, even defendants with medical conditions that are comorbidities with COVID-19 have been denied compassionate release."); *United States v. Folkes*, No. 18-CR-257, 2022 WL 1469387, at \*6 (E.D.N.Y. May 10, 2022) ("Even when a defendant has suffered from hypertension and obesity, courts in this Circuit have declined to grant compassionate release."); *United States v. Mack*, No. 19 CR. 27, 2021 WL 4148729, at \*2 (S.D.N.Y. Sept. 13, 2021) (denying compassionate release where defendant suffered from severe obesity, hypertension, and diabetes that placed him at increased risk of severe illness from COVID-19, but refused the vaccine when it was offered to him).

In sum, COVID-19, even coupled with pre-existing health conditions, provides no basis for relief at this time.

### 2. Caregiver

Defendant next argues that he is entitled to release because he "will be the primary care giver for his father" who has "numerous medical conditions, including a recent surgery." ECF No.

111 at 14. According to defendant, his father's other children (Defendant's siblings) "have their own family and work obligations that would prevent them from providing care" to his father. *Id.* While the Court is sympathetic to Defendant's circumstances, the Court concludes that such circumstances are not "extraordinary and compelling" under the First Step Act.

Courts have "broad discretion" in determining what constitutes an "extraordinary and compelling" circumstance for the purposes of compassionate release. *United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *2 (N.D. Ill. Apr. 3, 2020). Typically, district courts find that an inmate's family circumstances do not amount to an "extraordinary and compelling" reason within the meaning of 18 U.S.C. § 3582(c)(1)(A), in the absence of evidence that the prisoner is actually the sole caregiver. *See United States v. Rhodes*, No. CR 15-23, 2021 WL 4460031, at *6 (W.D. Pa. Sept. 29, 2021) ("Similarly, the 'family care' policy does not apply where other family members are available to provide care. In this case, the record reflects that Rhodes' sister is available to provide care for his mother, although she does not live close by her mother."); *see also United States v. Irizzary*, No. CR 14-652-13, 2021 WL 735779, at *8 (E.D. Pa. Feb. 25, 2021) (defendant not sole caregiver merely because his wife and kids were too busy to care for brother but not "incapacitated or otherwise unable" to care for him); *United States v. Moore*, No. CR 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020) (defendant failed to show that he was sole caregiver when sister and cousin who lived forty minutes away stated they are overwhelmed but did not show "they are somehow incapacitated or physically unable to care for" defendant's mother).

Here, Defendant acknowledges that he has siblings who are capable of assisting with his father's care. ECF No. 111 at 14. The only impediment to their offering assistance is having their own family and work obligations. That his siblings have family and work obligations do not make

them unavailable for purposes of this inquiry. While the Court sympathizes with Defendant's desire to assist his family, and has little doubt that the medical conditions he alleges may be serious, the Court finds that Defendant's present familial situation is not an "extraordinary and compelling" circumstance that warrants compassionate release within the meaning of 18 U.S.C. § 3582(c)(1)(A).

### 3. Immigration Status

Defendant next argues that compassionate release is warranted because his immigration status prevents him from receiving any "time off of his sentence for the successful completion of education and/or rehabilitative programming." ECF No. 111 at 25. In short, he believes that he is being punished more harshly due to his status as a deportable noncitizen. *Id.* The Court cannot grant relief on this basis.

First, at Defendant's second plea hearing, he was made aware that his immigration status would have certain additional and negative consequences on his punishment and Defendant agreed to accepting those consequences as a part of the plea agreement. He may not now contest those consequences via a motion for compassionate release. *See U.S. v. Laboy*, No. 15-CR-00091, 2021 WL 5176663 (W.D.N.Y. Nov. 8, 2021) ("[I]t is [in]consistent with the purposes of the compassionate release statute to allow a defendant to assert claims of legal error that he expressly waived the right to press through the ordinary means of direct appeal and collateral attack" in his plea agreement . . . "[t]o hold otherwise would be to allow compassionate release motions to act as an end run around the limitations imposed by the habeas statute"). Further, the consequences he alleges amount to complaints about the conditions of his confinement. As a general matter, "generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release." *United States v. Labarca*, No. 11 CR. 12, 2022 WL 203166, at *6

(S.D.N.Y. Jan. 24, 2022). Accordingly, Defendant's immigration status does not constitute an "extraordinary and compelling" reason to grant his release.

### C. Whether Compassionate Release Would Undermine the Goals of the Original Sentence

Even if Defendant could establish the existence of extraordinary and compelling circumstances, the Court would nevertheless conclude that a reduction of his term of imprisonment is inconsistent with the factors set forth in § 3553(a).

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
> (5) any pertinent [Sentencing Commission policy statement]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418, at *7 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

The Court weighed these factors when it imposed Defendant's original term of imprisonment. Defendant's offenses are serious. Here, Defendant pled guilty to a one-count superseding information which charged conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846. ECF No. 55. This offense carried a mandatory minimum sentence of 10 years. ECF No. 63 at 2. Defendant's

sentencing guidelines range was 168 to 210 months. *Id.* On December 17, 2018, the Court imposed a sentence of 151 months, below the guidelines range. ECF No. 66. In accordance with the plea agreement, the Court considered Defendant's acceptance of responsibility at sentencing. ECF No. 55 at 4. The Court imposed a substantial sentence that reflected its analysis of the § 3553(a) factors at that time.

For the reasons considered at sentencing, Defendant's sentence was and remains appropriate. Reducing an already below-guidelines sentence would fail to "reflect the seriousness of the offense, [] promote respect for the law, [and] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Accordingly, the Court concludes that Defendant has not met his burden of showing that release is warranted.

## CONCLUSION

Accordingly, Defendant's motion for compassionate release, ECF No. 111, is DENIED.

IT IS SO ORDERED.

Dated: October 2, 2023
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York